FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 25, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RICK M., | No. 2:17-CV-00283-JTR |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 13, 16. Attorney Dana C. Madsen represents Rick M. (Plaintiff); Special Assistant United States Attorney Leisa A. Wolf represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 15. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on October 16, 2012, Tr. 202-03, 374, alleging disability since April 28, 2004, Tr. 373, due to his neck, shoulder, and lower back, degenerative disk disease, arthritis, high blood pressure, and depression, Tr. 378.[1]

---

[1]The Court notes that there are no applications in the record.

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

The applications were denied initially and upon reconsideration. Tr. 258-61, 262-74. Administrative Law Judge (ALJ) Lori L. Freund held a hearing on February 20, 2015 and heard testimony from Plaintiff. Tr. 107-148. Vocational expert Jinnie Lawson appeared, but did not testify. *Id*. Plaintiff amended his onset date to July 21, 2012. Tr. 111-12. The ALJ held a second hearing on February 10, 2016 and heard testimony from Plaintiff and vocational expert Kimberly S. Mullinax. Tr. 149-83. The ALJ issued an unfavorable decision on April 19, 2016. Tr. 33-43. The Appeals Council denied review on June 20, 2017. Tr. 1-6. The ALJ's April 19, 2016 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c). Plaintiff filed this action for judicial review on August 16, 2017. ECF Nos. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 50 years old at the amended date of onset. Tr. 204. The highest grade in school he reported completing was the eighth and he did not receive his GED. Tr. 379. He reported that his past jobs include aircraft detailing, assembly, auto detailing, customer service, dismantling cars, and stacking newspapers. Tr. 379, 434-38. Plaintiff reported that he stopped working on August 20, 2008 due to his conditions. Tr. 378.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v.*

*Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs which the claimant can perform exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On April 19, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 21, 2012, the amended date of onset. Tr. 28.

At step two, the ALJ determined Plaintiff had the following severe impairments: right shoulder impingement syndrome; degenerative disc disease of the cervical and lumbar spine; alcohol dependence; polysubstance dependence in various stages of remission; depressive disorder not otherwise specific; and personality disorder traits. Tr. 28.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 30.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of light work with the following limitations:

> except he could sit, stand, and/or walk up to six hours in an eight-hour day with normal breaks; he could push or pull with the right upper extremity on a frequent, rather than constant, basis; he could occasionally use foot controls bilaterally; he could frequently balance, kneel, crouch, and climb ramps or stairs; he could occasionally stoop and crawl but could never climb ladders, ropes or scaffolds; he could reach overhead occasionally with both upper extremities; he would need to avoid concentrated exposure to extreme cold, excessive vibration, and the operational control of moving machinery; he should avoid even moderate exposure to unprotected heights; he would be limited to simple, repetitive tasks of reasoning level 2; he could only engage in occasional decision-making and tolerate occasional changes in a work setting; he should avoid production rate or timed, pace work; he could have no interaction with the public; and he could tolerate superficial contact with co-workers and supervisors but could not perform tandem tasks with others.

Tr. 34. The ALJ identified Plaintiff's past relevant work as a painter of transportation equipment, mailer, automobile detailer, cashier, salvage laborer, and automobile body repair helper and concluded that Plaintiff was not able to perform this past relevant work. Tr. 42.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of cleaner housekeeping and mail clerk. Tr. 43. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from July 21, 2012, through the date of the ALJ's decision. *Id*.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ harmfully erred by (1) failing to properly weigh the medical source opinions and (2) failing to properly address Plaintiff's symptom statements.

**DISCUSSION[2]**

**1.     Opinion Evidence**

Plaintiff argues the ALJ failed to properly consider and weigh the opinions

---

[2]In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent Lucia applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

expressed by Dennis R. Pollack, Ph.D., Stacy Jarvis, PA-C, Donna Henry, ARNP, and nonexamining reviewing physicians. ECF No. 13 at 13-17.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31. The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

**A.     Dennis R. Pollack, Ph.D.**

Dr. Pollack evaluated Plaintiff on February 14, 2014. Tr. 654-59. He administered the Clark-Beck Obsessive-Compulsive Inventory, Trail Making Test, Wechsler Adult Intelligence Scale – IV, and Minnesota Multiphasic Personality Inventory – 2, and reviewed "[e]xtensive medical reports." Tr. 654, 657-58. He diagnosed Plaintiff with major depressive disorder, pain disorder associated with

both psychological factors and general medical condition, alcohol abuse in remission, polysubstance abuse in remission, and antisocial personality traits. Tr. 659. He completed a Mental Medical Source Statement finding that Plaintiff had a marked[3] limitation in the abilities "to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," and "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 661. He also found that Plaintiff had a moderate limitation in the ability "to accept instructions and respond appropriately to criticism from supervisors." *Id.* He found that Plaintiff had no limitation or a mild limitation in the remaining seventeen functional abilities. Tr. 660-62.

The ALJ discussed Dr. Pollack's opinion throughout her decision. She found that Dr. Pollack's diagnosis of pain disorder to be inconsistent with the objective medical evidence. Tr. 30. As for the Mental Medical Source Statement form, the ALJ gave Dr. Pollack's test results and findings of none to moderate limitations "significant weight," but rejected the two marked limitations for three reasons: First, the marked limitations were "wholly inconsistent with Dr. Pollack's own objective findings and the other ratings," and "inconsistent with Dr. Pollack's notes of the claimant's presentation and test results." Tr. 33, 41. Second, "Dr. Pollack appeared to base his marked ratings solely on the claimant's self-reports, as his objective tests do not support the level of severity. The claimant' self-reports are inconsistent with the medical findings, and any ratings based only on those reports merits little weight." Tr. 33. Third, Plaintiff provided inconsistent statements regarding his substance abuse. Tr. 40. The parties agree that the

---

[3]A marked limitation is defined as "[s]eriously affects ability to perform basic work functions on a regular basis." Tr. 660.

specific and legitimate standard is applicable to the ALJ's treatment of Dr. Pollack's opinion. ECF No. 13 at 15, 16 at 9.

The ALJ's first reason for rejecting Dr. Pollack's opined marked limitations, that they were inconsistent with his own findings and test results expressed in his report, meets the specific and legitimate standard. The ALJ found that Dr. Pollack opined that Plaintiff was markedly limited in being punctual yet he appeared on time at his evaluation. Tr. 33. Likewise, the ALJ found that Dr. Pollack stated that Plaintiff was only mildly limited in his ability to sustain an ordinary routine, but he gave him a marked limitation in the ability to complete a normal workday and workweek or perform at a consistent pace. *Id*. Additionally, the ALJ summarized Dr. Pollack's rather normal findings and found that they supported his none to mild limitations opined. Tr. 41. In doing so, she found the marked limitations out of step with these normal test results and observations made during the evaluation. Tr. 41. An ALJ may cite internal inconsistencies in evaluating a physician's report in giving the doctor less weight. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes*, 881 F.2d at 751. Here, the ALJ summarized Dr. Pollack's observations and test results and gave specific references to how and why they were inconsistent with the marked limitations opined. As such, the ALJ met the specific and legitimate standard.

The ALJ's second reason for rejecting Dr. Pollack's opined marked limitations, that they were based on Plaintiff's symptom reports instead of objective evidence, also meets the specific and legitimate standard. A doctor's opinion may be discounted if it relies on a claimant's unreliable self-report. *Bayliss*, 427 F.3d at 1217; *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). But the ALJ must provide the basis for her conclusion that the opinion was more heavily based on a claimant's self-reports rather than objective evidence.

*Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

Here, the ALJ has provided a reason for her conclusion that Dr. Pollack relied more heavily on Plaintiff's self-reports than the objective evidence: "Dr. Pollack appeared to base his marked ratings solely on the claimant's self-reports, as his objective test results do not support that level of severity." Tr. 33. As addressed above, the ALJ provided sufficient rationale that the normal test results supported the none to mild limitations but not the marked limitations. Therefore, this reason also meets the necessary standard to uphold the ALJ's treatment of Dr. Pollack's opinion.

The ALJ's third reason for rejecting Dr. Pollack's opinion, that Plaintiff inconsistently reported his substance use "suggest[ing] that Dr. Pollack reached his conclusions without all relevant information," Tr. 40, meets the specific and legitimate standard. An ALJ may properly reject a medical opinion that is rendered without knowledge of a claimant's substance abuse. *See Coffman v. Astrue*, 469 Fed.Appx. 609, 611 (9th Cir. 2012); *Serpa v. Colvin*, No. 11-cv-121-RHW, 2013 WL 4480016, *8 (E.D. Wa., Aug. 19, 2013). Plaintiff argues that Dr. Pollack was aware of Plaintiff's substance use and his opinion took Plaintiff's discrepancy in reporting his substance use into account. ECF No. 13 at 15.

Dr. Pollock summarized the records he reviewed as follows:

> Medical records indicate that he was continuing to drink as late as 9-27-12. He was diagnosed on 11-18-2010 with a substance abuse induced mood disorder by a Montana evaluator. Records from [K]alispell Regional Medical Center indicate that he has a long history of alcohol abuse, prescription drug abuse, IV drug abuse as well as cocaine and methamphetamine abuse.

Tr. 654. Plaintiff reported to Dr. Pollack that he had not drank anything since 2011 and did not report any history of drug abuse. Tr. 656. Dr. Pollock noted these inconsistencies in his report:

ORDER GRANTING DEFENDANT'S MOTION . . . - 9

> He states that he stopped drinking in 2011 which is not consistent with the medical records. They [*sic*] records indicate that he was still using alcohol in late 2012. . . . Medical records indicate that he was an intravenous drug user, and abused cocaine and methamphetamine. He did not report his history of drug abuse.

*Id.*

On February 17, 2015, Plaintiff's attorney submitted records from CHAS Clinic which included a July 11, 2013 report from Stacy Jarvis, PAC stating "He tells me that he has made some really bad decisions and his uncle has helped him get back into using heroin. He is scared and unsure of how to stop using. He has tried to purchase suboxone or methadone off the street but it is too expensive for him." Tr. 683. This reference to heroin use in 2013 is repeated in a July 2014 evaluation. Tr. 668. These records were associated with the administrative record after Dr. Pollack's February 14, 2014 opinion was rendered and nothing in Dr. Pollack's report indicates he reviewed these statements. Therefore, Defendant's argument that Dr. Pollock was aware of the substance use at the time of rendering his opinion is not accurate. The ALJ's rejection of Dr. Pollock's opinion references the 2013 heroin usage, Tr. 40, and substantial evidence supports the notion that Dr. Pollock was likely not aware of the recent heroin use. The Court will not disturb the weight assigned to Dr. Pollack's opinion.

### B. Stacy Jarvis, PA-C

Plaintiff challenges the ALJ's determination discounting Ms. Jarvis' August 21, 2012 opinion.[4] ECF No. 13 at 15-16.

As a physician's assistant, Ms. Jarvis does not qualify as an acceptable medical source. 20 C.F.R. §§ 404.1502(a); 416.902(a). As such, the ALJ is only

---

[4]The Court notes that Ms. Jarvis provided two opinions. The First on June 5, 2012, Tr. 573-78, and the second on August 21, 2012, Tr. 579-81. Plaintiff only challenged the second opinion. ECF No. 13 at 15.

required to pervade "germane" reasons to reject her opinion. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

On August 21, 2012, Ms. Jarvis evaluated Plaintiff, Tr. 582-86, and opined that Plaintiff was limited to sedentary work, Tr. 581. At the bottom of the opinion page, there is a signature from a reviewing and adopting professional which appears to be an M.D. *Id*. The ALJ found no support for this opinion citing that just two months earlier Ms. Jarvis found Plaintiff capable of light to medium work and there was no justification for the reduction in functional capacity. Tr. 37. Additionally, the ALJ rejected the unknown M.D. signature, stating that "the undersigned does not consider this an acceptable medical opinion. None of the claimant's prior evaluations included a medical doctor's name or suggested that he was treated by an acceptable medical source." *Id*.

First, Plaintiff failed to raise any challenges to the ALJ's reasons for rejecting the opinion. ECF No. 13 at 15-16. Instead, he asserts that the August 21, 2012 opinion should be given more weight than the June 5, 2012 opinion because it was endorsed by a physician and that based on the medical evidence "it would be probable that [Plaintiff] would be limited to sedentary work." *Id*. Despite Plaintiff's assertions, the ALJ's rationale is sufficient to meet the lessor standard of germane reasons. The ALJ is accurate that Ms. Jarvis' June 5, 2012 opinion stating that Plaintiff was capable of light to medium work is inconsistent with the August 21, 2012 opinion limiting him to sedentary work. Tr. 573-74. There does not appear to be any significant change in the two months between the opinions to justify such a difference. The imaging results Ms. Jarvis discussed in her August 21, 2012 evaluation predate the June 5, 2012 opinion. Tr. 582, 588-93. The Electrodiagnostic Study submitted with the August 21, 2012 opinion was completed after the June 5, 2012 opinion, but it showed normal results. Tr. 587. Therefore, the ALJ's first reason is supported by substantial evidence and meets the germane standard.

The ALJ's decision to reject the signature of an unknown M.D. is supported by substantial evidence. A signature appears on the opinion, but it is unclear if it is a provider who actually examined Plaintiff. Tr. 581. Furthermore, the evaluation report fails to state whether another provider was present for the exam. Tr. 582-86.

Even if the unknown physician had examined Plaintiff, the ALJ's reason for rejecting the opinion would meet the specific and legitimate standard. *See Bayliss*, 427 F.3d at 1216 (finding that an ALJ may cite internal inconsistencies in evaluating a physician's report). Therefore, the Court will not disturb the weight provided to the August 21, 2012 opinion.

### C. Donna Henry, ARNP

Plaintiff challenges the ALJ's rejection of Nurse Henry's opinion. ECF No. 13 at 16. Nurse Henry completed a Physical Functional Evaluation form on August 1, 2014 limiting Plaintiff to sedentary work. Tr. 664-66. The ALJ rejected the opinion finding that it was inconsistent with the concurrent treatment and Nurse Henry's own findings. Tr. 38.

Plaintiff's challenge consists of a single sentence and fails to address the reasons the ALJ provided for rejecting Nurse Henry's opinion. *Id*. Instead it presents an alternative evaluation of the evidence: "CHAS ARNP Henry made the same limitations opinion in July 2014 as PA-C Jarvis in August 2012. (See TR 579-81, 664-67) ARNP Henry's opinion is supported by the findings of the earlier opinion that a CHAS physician endorsed, reviewed and adopted the opinion." ECF No. 13 at 16. It is not this Court's role to reweigh the evidence, but rather to determine if the ALJ's determination is supported by substantial evidence or based on legal error. *Sprague*, 812 F.2d at 1229-30; *Tackett*, 180 F.3d at 1097. Since Plaintiff failed to challenge the reasons the ALJ provided for rejecting Nurse Henry's opinion, the Court need not address them. *See Carmickle*, 533 F.3d at 1161 n.2 (The Court is not required to consider arguments that are not expressly raised in Plaintiff's briefing.). This Court will not disturb the weight provided to

Nurse Henry's opinion.

### D. Nonexamining Reviewing Physicians

Plaintiff argues the ALJ erred by relying on nonexamining physicians to reject the opinions of examining physicians. ECF No. 13 at 16 (*citing Lester*, 81 F.3d at 830).

The Court in *Lester* held that a nonexamining physician's opinion could not, by itself, constitute substantial evidence that justifies the rejection of the opinion of an examining or a treating physician. 81 F.3d at 830. However, that is not what the ALJ has done here. As discussed at length above, the ALJ provided reasons other than the opinions of nonexamining physicians as support for the weight provided to the examining providers discussed above. Therefore, Plaintiff's reliance on *Lester* in this instance is misplaced.

## 2. Plaintiff's Symptom Statements

Plaintiff argues the ALJ erred by discounting Plaintiff symptoms statements. ECF No. 13 at 12-13.

The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 35. The ALJ reasoned that Plaintiff's statements were less than fully credible because the level of limitation claimed was not supported by objective evidence, Tr. 35, and because Plaintiff provided misinformation under oath at the hearing, Tr. 29.

It is generally the province of the ALJ to make determinations regarding the credibility of a claimant's symptom statements, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what

testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

Plaintiff argues that the only reason the ALJ provided for rejecting his symptom statements were because they were inconsistent with objective medical evidence. ECF No. 13 at 13-14. He relies upon the Ninth Circuit's holding in *Robbins v. Soc. Sec.*, *Admin.* that an ALJ cannot make an adverse credibility determination "solely because" a claimant statements are "not substantiated affirmative by objective medical evidence." 466 F .3d 880, 883 (9th Cir. 2006).

In contrast, Defendant argues that in addition to the inconsistencies with the medical evidence, the ALJ relied on inconsistent statements by Plaintiff regarding his ability to walk and on the reported severity of symptoms being inconsistent with Plaintiff's reported activities. ECF No. 16 at 4-5. Defendant asserts that the ALJ is not required to use "magic words" to achieve her analysis, as long as the Court can draw specific and legitimate inferences from her findings. ECF No. 16 at 4 (*citing Magallanes*, 881 F.2d at 755).

The Court disagrees with Defendant's reliance on *Magallanes* in this situation. The Ninth Circuit in *Magallanes* was discussing what was necessary to meet the specific and legitimate standard in order to reject a provider's opinion. *Magallanes*, 881 F.2d at 755. When it comes to the crediting or rejecting Plaintiff's symptom statements, the Circuit Court has held that the standard is "specific, clear and convincing." *Smolen*, 80 F.3d at 1281. Recent Circuit decisions have highlighted this standard and identified it as the most demanding standard to meet. *See Garrison v. Colvin*, 759 F.3d 1014, 1021 (9th Cir. 2014) (*quoting Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) ("The clear and convincing standard is the most demanding required in Social Security cases.")).

Therefore, the Court reviews the ALJ's decision carefully and finds that the ALJ only specifically references the reliability of Plaintiff's statements twice. The

most obvious location is in the residual functional capacity determination finding his statements inconsistent with the objective medical evidence: "In terms of the claimant's alleged physical impairments and their corresponding symptoms, the objective medical evidence does not fully support the level of limitation claimed." Tr. 35. The second time is during the step two determination in which the ALJ specifically found that Plaintiff had likely been untruthful at the hearing:

> At the second hearing in February 2016, the claimant denied that he used any street drugs in the previous five years, but he admitted to Stacy Jarvis, PA-C, in July 2013 that he had started using heroin again and wanted to stop (Ex. C10F, p5). He reported in July 2014 that he was "drug-free," although the reliability of his statement is questionable given the misinformation he provided under oath at the hearing.

Tr. 29.

In support of the first reason, that Plaintiff's symptom statements were not supported by objective evidence, the ALJ summarized Plaintiff's allegations and provided repeated citations to imaging reports and a lack of abnormal examinations demonstrating a lack of support for the reported severity of symptoms. Tr. 35-36. Plaintiff's challenge was simply to provide an alternative interpretation of the evidence and assert that the medical evidence does support his alleged severity of statements. ECF No. 13 at 12. As discussed above, this is Court is not a trier of fact, but reviews whether the ALJ's determination was supported by substantial evidence or based on legal error. *See Sprague*, 812 F.2d at 1229-30; *Tackett*, 180 F.3d at 1097. In situations where there is evidence to support both the ALJ's determination and Plaintiff's arguments, the Court gives deference to the ALJ's interpretation of the evidence. *Id*. Therefore, the Court will not disturb the ALJ's determination that Plaintiff's allegations were not supported by objective medical evidence.

The ALJ's second reason, that Plaintiff provided "misinformation" while under oath at the hearing, went unchallenged by Plaintiff. As such, the Court is not

required to address it. *See Carmickle*, 533 F.3d 1155, 1161 n.2. However, both parties failed to identify this as a reason the ALJ provided for finding Plaintiff's statements unreliable, so this Court will address it in full.

In determining the reliability of Plaintiff's statements, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284. Here, the ALJ found that Plaintiff was untruthful during his testimony under oath. Her finding is supported by substantial evidence. In a July 11, 2013 report Stacy Jarvis, PAC states "He tells me that he has made some really bad decisions and his uncle has helped him get back into using heroin. He is scared and unsure of how to stop using. He has tried to purchase suboxone or methadone off the street but it is too expensive for him." Tr. 683. This heroin usage in 2013 is referenced again in a July 2014 evaluation. Tr. 668. At the February 2016 hearing, the ALJ questioned Plaintiff about his use of street drugs in the last five years, and he denied any usage. Tr. 158. In fact, when the ALJ questioned Plaintiff at the February 2015 hearing about the May and July 2013 references to heroin, Plaintiff denied the use of any street drugs, asserting that he was only referred to drug treatment for his use of pain pills. Tr. 143-44. Therefore, the ALJ's determination that Plaintiff provided "misinformation" while under oath is supported by substantial evidence and is legally sufficient to support a determination that Plaintiff's symptoms statements are unreliable.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

ORDER GRANTING DEFENDANT'S MOTION . . . - 16

2. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED September 25, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE